UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ARMENUHI PAMBUKCHYAN, | ) | Case No. CV 07-00230-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | (Social Security Case) |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |

Plaintiff filed a Complaint in this Court on January 11, 2007 seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits filed on June 14, 2001, following a hearing before an Administrative Law Judge ("ALJ"), on January 14, 2005, which resulted in an adverse decision dated March 28, 2005. The Appeals Council denied Plaintiff's request for review of the hearing decision on November 22, 2006. This Court has jurisdiction pursuant to 42 U.S.C. §405 and 42 U.S.C. §1383(c)(3) of the Social Security Act

---

[1] On February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

("Act").

Plaintiff seeks relief in the form of a judgment decreeing that she is disabled within the meaning of the Act, or alternatively, that the Court remand the case for a <u>de</u> <u>novo</u> hearing by a different ALJ.

Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.   This Memorandum Opinion shall constitute the Court's findings of facts and conclusions of law.

For the reasons to be set forth herein, the Court determines that the Commissioner's decision is based on substantial evidence, and will be affirmed.

**ISSUES RAISED**

1.   Whether the ALJ erred in failing to give appropriate weight to the treating or examining physicians;

2.   Whether the ALJ erred in evaluating the Plaintiff's severe impairments;

3.   Whether the ALJ erred in determining Plaintiff's residual functional capacity ("RFC");

4.   Whether the ALJ erred in finding Plaintiff can perform work; and,

5.   Whether the ALJ erred in improperly evaluating Plaintiff's credibility.

**THE ALJ DID NOT ERR IN EVALUATING THE OPINIONS**

**OF TREATING AND EXAMINING PHYSICIANS**

Plaintiff's case is marked by a lengthy and extensive Administrative Record ("AR"), containing a substantial variety of

1  physical and mental treatment records from different sources.

2  Plaintiff asserts that the ALJ failed to properly evaluate the

3  opinions of her treating sources.  The Court will discuss each of

4  those sources separately.

5

6      **A.   <u>Dr. Balian</u>**:[2]

7      Dr. Balian completed a lumbar spine RFC questionnaire.  The ALJ

8  summarized this report (AR 24), noting that Dr. Balian opined that

9  Plaintiff frequently had severe enough pain to interfere with

10 attention and concentration; that she could not even walk a block;

11 that she could sit ten minutes at a time and stand five minutes at a

12 time; that she could sit and stand or walk less than two hours in an

13 eight-hour working day; that she must walk every 45 minutes for ten

14 minutes; that she must take a break every 30 to 60 minutes for 15 to

15 20 minutes; that she must use a cane; that she could occasionally lift

16 or carry less than ten pounds and rarely lift 10 or 20 pounds; that

17 she should never lift 50 pounds; that she could occasionally twist,

18 rarely stoop or climb stairs, and never crouch or climb ladders; and,

19 that she would likely be absent from work more than four times a

20 month. (<u>See</u> AR at 24.)  The ALJ discounted Dr. Balian's opinion for

21 two reasons.   First, he noted that Dr. Balian assessed extreme

22 limitations with respect to the Plaintiff's ability to work despite

23 minimal objective findings. He also gave Dr. Balian's opinion little

24 weight because Dr. Balian stated that Plaintiff needed to use a cane.

25 The ALJ noted that this conclusion was inconsistent with the record.

26 ────────────────

27      [2]   Although the parties refer to this source as "Dr. Bailan,"
   his report (an RFC questionnaire, AR 659-663) is signed "Dr. Balian."
28 The Court will therefore refer to this source as Dr. Balian.

1   (<u>See</u> AR at 25, citing Exhibits.)

2      Plaintiff's argument only addresses the ALJ's reasoning regarding
3 the cane.  In doing so, Plaintiff engages in some speculation.  The
4 questionnaire plainly asks, "While engaging in occasional
5 standing/walking, must your patient use a cane or other assistive
6 device?"  This elicited a "Yes" answer; however, Plaintiff now asserts
7 that, "This statement does not necessarily mean the Plaintiff needs to
8 use a cane, but, rather, needs some sort of assistance when walking or
9 standing." (<u>See</u> Joint Stipulation ["JS"] at 4.)  Dr. Balian's response
10 is specific and unambiguous, and it is only Plaintiff's counsel who
11 inserts some ambiguity, which is then posited as the basis for a need
12 to develop the record further.  There is no requirement to develop the
13 record where the evidence lacks ambiguity.

14      Plaintiff fails to note or discuss the ALJ's additional stated
15 reasons for rejecting Dr. Balian's opinion (in addition to Dr.
16 Maissian's and Dr. Yegyan's opinions, <u>see</u> <u>infra</u>): that it was based on
17 minimal objective findings.  (<u>See</u> AR at 25.)  This, however, is an
18 extremely important factor, especially in a case such as this which is
19 characterized by a plethora of different physicians' medical
20 examinations, records, diagnoses, and opinions, many of which are
21 inconsistent with each other.  The Ninth Circuit has held that the ALJ
22 is not required to credit the opinion of a physician, including that
23 of a treating physician, where it is inadequately supported by
24 clinical findings.  See <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir.
25 2002).  Moreover, to give a physician's opinion substantial weight, it
26 must not be inconsistent with other substantial evidence in the
27 record.  See <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).
28 Here, the brief form which Dr. Balian completed does in fact contain

1  minimal objective findings. (<u>See</u> AR at 659-663.)  For this additional

2  reason, the ALJ permissibly discounted Dr. Balian's opinion.

3

4        **B.   <u>Dr. Yegyan</u>:**

5        The ALJ also considered the opinion of Dr. Yegyan, a neurologist.

6  (AR 719-729, 24-25.)   The ALJ found Dr. Yegyan's opinion "less

7  persuasive" because his report appears to contain inconsistencies.

8  Specifically, Dr. Yegyan assessed restrictions inconsistent with his

9  own treatment notes, such as stating that Plaintiff had daily

10 headaches, which contradicted a treatment note stating that Plaintiff

11 has numbness once or twice a month, and headaches a little more often.

12 (<u>See</u>, <u>Id</u>.)

13       Plaintiff interprets Dr. Yegyan's notes as referring to a

14 combination of numbness in Plaintiff's head, which may or may not be

15 combined with headaches, migraines, and "regular" headaches, which

16 Plaintiff asserts could average out to a daily duration. (<u>See</u> JS at 5,

17 citing AR at 725-728.)   But again, Plaintiff places a strained

18 interpretation on unambiguous medical records.   In response to a

19 question in a Residual Functional Capacity Questionnaire asking him to

20 characterize the nature, location and intensity/severity of

21 Plaintiff's headaches, Dr. Yegyan indicated that she has tension

22 headaches with vascular component "almost every day." (AR at 725.)

23 This, in fact, is inconsistent with his treatment notes, such as a

24 notation of October 28, 2003. (<u>See</u> AR at 720.)  Moreover, when asked

25 to describe any other limitations, including limitations in the

26 ability to sit, stand, walk, lift, bend, stoop, or limitations in

27 using arms, hands, fingers, limited vision, difficulty hearing, need

28 to avoid temperature extremes, etc. which affect Plaintiff's ability

1    to work at a regular job on a sustained basis, Dr. Yegyan wrote

2    "None." (AR 728.)[3]

3

4        **C.   _Dr. Maissian_**:

5        As the ALJ noted, Dr. Maissian (characterized by Plaintiff as her

6    primary treating physician) completed a form in September 2003

7    indicating that Plaintiff was permanently and totally disabled, and in

8    the previous month, opined that she could not sit, stand, and walk for

9    long periods, that she could not lift, bend or stoop for long periods

10   due to headaches, vomiting, imbalance and blurred vision, and that she

11   must take unscheduled breaks lying down five times a day for 20

12   minutes at a time.  Dr. Maissian also opined that Plaintiff could not

13   walk for a block, that she could stand or walk less than two hours in

14   an eight-hour working day, and that she was limited in the use of her

15   hands, fingers and arms. (See AR at 24, 758-792.)  The ALJ rejected

16   Dr. Maissian's opinion because it was supported by minimal objective

17   _____

18        [3]    This aspect of Dr. Yegyan's report highlights some of the
     difficulty with Plaintiff's arguments.  Several of the treating
19   physicians' opinions which Plaintiff argues were improperly rejected
     by the ALJ are in fact substantially inconsistent with each other.
20   For example, Dr. Yegyan, as noted, only assessed limitations from
     headaches.   Dr. Maissian (see next section) assessed specific
21   limitations based on problems with Plaintiff's upper extremities.
     Plaintiff's argument would appear to be that the ALJ improperly
22   discounted the opinions and conclusions of various of these treating
     doctors when, instead, he should have only discounted portions of
23   them, and accepted the rest of the opinions.  How, then, was the ALJ
     to reconcile, for example, Dr. Yegyan's opinion that Plaintiff had
24   limitations only from headaches with Dr. Maissian's opinion that
     Plaintiff had limitations due to upper extremity impairments?
25   Presumably, Dr. Yegyan, a neurologist, would have found upper
     extremity limitations on examination if they existed.  Essentially,
26   what Plaintiff appears to be suggesting is that the ALJ, and now the
     Court, should adopt an amalgam of opinions.  The Court rejects such an
27   approach as completely unsubstantiated and unprecedented in Social
     Security law.
28

                                    6

findings, and, in addition, it was inconsistent with other medical evidence in the record. Thus, the ALJ noted that although Dr. Maissian opined that positive test results and objective signs supported Plaintiff's complaints regarding headaches, as shown by x-rays, MRI, and CT scans, in fact, the CT scan of Plaintiff's brain was unremarkable; an MRI was normal except for an incidental note of a fluid-like density, and finally, an x-ray from January 2000 showed that Plaintiff's cervical spine examination was normal except for a calcification on the right side of her neck. (AR 25-26.)

The MRI report (AR 790-791) can be plainly read as supporting the ALJ's conclusion that it was essentially normal. As to the CT scan, the physician's impression is stated as "unremarkable CT scan study of the brain with and without contrast injection." (AR 491.) The results of the x-ray are set forth in the following Impression: "Mild degenerative spondylosis seen at lower thoracic and lumbar spine." (AR 490.)

Further, Plaintiff urges the Court to accept Dr. Maissian's opinion that she has specific functional limitations due to impairments in her upper extremities, largely because Dr. Maissian is Plaintiff's primary treating physician and has a long relationship with her, as against consultative examiners ("CE") who saw her for only a brief examination. (See JS at 7.) This, however, is not the law. A treating physician's status, as such, does not elevate his or her opinion to incontrovertability. The ALJ has an obligation to evaluate that opinion with respect to whether it is supported by treatment and clinical records, whether it is consistent with other substantial evidence in the record (see Magallanes, 881 F.2d at 751), and if it is contradicted, the ALJ must provide specific and

1  legitimate reasons for rejecting it. (See Thomas, 278 F.3d at 957;

2  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).)

3       As the ALJ noted, when Plaintiff received a neurological CE on

4  February 23, 2004 (AR 26, 710-714), the examining physician, Dr.

5  Moore, noted that, "There are no complaints of focal limb weakness or

6  distal limb incoordination in the upper extremities.  There are no

7  complaints of upper extremity paresthesias." (AR 710.)  Indeed, Dr.

8  Moore found no such limitations.[4]

9       Finally, the ALJ also relied upon historic records provided by

10 various physicians, some of whom examined Plaintiff.  Dr. Leoni, for

11 example, performed an internal medicine CE in 1997 and, at that time,

12 concluded that Plaintiff walks with a normal gait and balance, does

13 not require the use of an assistive device for ambulation, and is

14 neurologically intact, with normal reflexes and adequate strength. (AR

15 401.)

16      Similarly, the ALJ relied upon Dr. Tsesin, who examined Plaintiff

17 in May 1999, found only a mild decrease in range of motion in

18 Plaintiff's lumbar spine, and agreed that Plaintiff had a normal gait.

19 (AR 23, 25, 414-419.)

20      In determining Plaintiff's RFC, the ALJ also relied upon reports

21 from examining physicians Dr. Farboodi and Dr. Mohamdi, who examined

22 Plaintiff in May 2000 and September 2001, respectively. (AR 23, 25,

23 455-459, 461-466.)  Essentially, these examining physicians reached

24 similar conclusions as to Plaintiff's functional abilities and

25 limitations.

26 

27      [4]   Dr. Moore's interpretation of the MRI scan referenced in the
   preceding section was that, "The patient's most recent MRI scan of the
28 low back does not reveal evidence of a significant discogenic process
   involving the lumbrosacral spine." (AR at 713.)

1    In sum, as to Plaintiff's physical limitations, the ALJ performed
2    his task of reviewing and evaluating all of the available medical
3    evidence, and then applied appropriate legal principles in weighing
4    and considering that evidence.  The Court finds no error in the ALJ's
5    assessment of Plaintiff's treating physicians' opinions.

6

7        **D.    <u>Verdugo Mental Health (Dr. Ciasca)</u>:**

8    With regard to mental limitations, the ALJ examined the reports
9    of Verdugo Mental Health, and also considered the opinions of
10   examining psychiatrists. (AR 26-28.)

11       Plaintiff's argument is that the Court should consider the
12   impropriety of the ALJ's rejection of the opinion of Dr. Ciasca, of
13   Verdugo Mental Health, because the ALJ incorrectly noted that Dr.
14   Ciasca had only seen Plaintiff three times.  That is not the gist of
15   the reasoning set forth by the ALJ.  In fact, the ALJ's opinion
16   regarding the weight to be accorded to Dr. Ciasca bears repeating.
17   The following is what he actually wrote:

18       "Dr. Ciasca, even though he is a treating physician,
19       did not express an opinion that should be given great
20       weight.  He only saw the claimant three times and admitted
21       that he was 'unable at this point to judge treatment
22       response.'  In response to the question, 'Is your patient a
23       malingerer?' he responded 'I don't think so' and did not
24       check the box for 'No.'  In response to other questions on
25       the same page, he checked off the boxes for yes or no.  I
26       surmise that he did not check the box for 'No' in response
27       to the malingerer question because he was not convinced the
28       claimant was not a malingerer.  Also, in response to the

question, 'Has your patient's impairment lasted or can it be expected to last at least twelve months?' he responded 'I believe so' and did not check the box for 'Yes.'  Thus, it appears Dr. Ciasca was not certain that the claimant's mental impairment would even last twelve months.  The restrictions he assigned are internally inconsistent with the tentative nature of his answers.  Therefore, I give less weight to his opinion."

(AR 27-28.)

Plaintiff asserts that Dr. Ciasca's calculation of a total of three visits between June 6, 2003 and December 12, 2003, when Dr. Ciasca completed a questionnaire, is incorrect, and that the ALJ should have focused more on the "team treatment" aspect of Plaintiff's experience with Verdugo Mental Health.  In fact, the Court's own review of the records indicates that there was only one visit, on December 7, 2003, which failed to be included in the count. (See AR at 739.)  In any event, the ALJ was absolutely on the mark in interpreting Dr. Ciasca's response to the questionnaire.  He indicated that he was "unable at this point to judge treatment response." (AR 731.)  On the same page he indicated that Plaintiff's prognosis is "unknown at this point."  He also was uncertain whether she is a malingerer (see, Id.), and, as the ALJ noted, he was unable to provide an unequivocal response as to whether Plaintiff's impairment had lasted or could be expected to last at least 12 months, stating, "I believe so" in response to that question. (See, Id.)  Although Plaintiff fails to address the issue, it is fundamental that in order to establish a disability, a durational period of 12 months must be

1  demonstrated.  See 20    C.F.R. §416.909.

2  Finally, the ALJ did rely upon the CE report of Dr. Pierce (AR

3  27, 745-753).

4

5  **THE ALJ PROPERLY EVALUATED PLAINTIFF'S IMPAIRMENTS**

6  In her second issue, Plaintiff contends that the ALJ erred in not

7  finding that Plaintiff's headaches were a severe impairment.  In fact,

8  the ALJ did not reject the existence of chronic headaches; rather, he

9  determined that these were among Plaintiff's non-severe medically

10 determinable impairments. (See AR 30, Finding 2.)

11 Determination of RFC is based upon a consideration of both severe

12 and non-severe impairments.  20 C.F.R. §416.923 provides, in pertinent

13 part, that: "... we will consider the combined effect of all of your

14 impairments without regard to whether any such impairment if

15 considered separately, would be of sufficient severity."  It is

16 further provided in 20 C.F.R. §416.945(a)(2) that in the determination

17 of RFC, all impairments, including those that are not determined to be

18 severe, are to be considered.

19 In this case, the ALJ did find severe and non-severe impairments,

20 and as required by the regulations, considered all of these

21 cumulatively in determining Plaintiff's RFC.  While Plaintiff asserts

22 that error lies in the fact that the impairment of chronic headaches

23 was not considered to be severe, as the Court noted in the previous

24 section discussing Plaintiff's first issue, the only physicians who

25 assessed limitations on Plaintiff's functioning and RFC as due to

26 headaches were Drs. Balian, Yegyan and Maissian, whose opinions were

27 discounted by the ALJ for the reasons stated, and which the Court has

28 upheld.

11

1    For the foregoing reasons, the Court finds no error in the ALJ's

2   assessment of Plaintiff's headaches as a non-severe impairment.

3

4            **THE ALJ DID NOT ERR IN ASSESSING PLAINTIFF'S**

5                    **RESIDUAL FUNCTIONAL CAPACITY**

6    Plaintiff's   third   issue   is   that   the   ALJ,   in   determining

7   Plaintiff's RFC (see AR at 30, Finding 5), failed to incorporate a

8   limitation that she cannot work with the public. (See JS at 20, et

9   seq.)  Plaintiff asserts that this was error because it ignores the

10  conclusions of Dr. Griffin, the psychiatric medical expert ("ME") who

11  testified at the hearing, and Dr. Pierce, one of the consultative

12  examiners.

13   Dr. Pierce performed a psychological CE, and concluded, with

14  regard to this issue, that, "The [Plaintiff] would have estimated

15  mild-to-greater difficulty working effectively with others." (AR 749,

16  emphasis added.)  At the hearing, the ME agreed with Dr. Pierce's

17  conclusion, but extended this to an inability on Plaintiff's part to

18  work with the public, in employment such as being a receptionist. (See

19  AR at 87.)

20   Dr. Pierce did not, as Plaintiff contends, find that Plaintiff is

21  unable to work and interact with the public.  The ALJ was not required

22  to accept the ME's conclusion that Plaintiff could not work with the

23  public.  The ME did not examine Plaintiff; Dr. Pierce did.

24   With regard to Plaintiff's assertion that the ALJ improperly

25  failed to interpret and incorporate the opinion of Dr. Maxwell, a

26  testifying ME, the parties disagree as to the meaning of Dr. Maxwell's

27  testimony.  The Commissioner asserts that Dr. Maxwell was rendering a

28  conclusion as to Plaintiff likely missing several days of work a month

based on medical records, not his own independent opinion.  Of course,
Dr. Maxwell never examined Plaintiff, and his opinion, as with that of
any non-examining physician, must be based on records.  Dr. Maxwell's
role was not to discount records.  Yet, the evidence that Plaintiff
would miss several days of work a month was based on the opinion of
Plaintiff's treating physicians that because of her headaches, this
would be the case.  The ALJ rejected that portion of the treating
physicians' opinions as being inconsistent with the entire medical
record.

   The Court finds no error in the ALJ's assessment of Plaintiff's
RFC.


**THE ALJ PROPERLY DETERMINED THAT PLAINTIFF CAN PERFORM WORK**

   Plaintiff's fourth issue is that error was committed in the ALJ's
determination that she was able to perform work.  Based on
hypothetical questions posed at the hearing to a vocational expert
("VE"), the ALJ determined that Plaintiff could perform various jobs.
(AR 29-30, 31 [Finding 10], 93-110.)

   Plaintiff asserts that the RFC as determined by the ALJ, which
formed the basis for the content of the hypothetical question he posed
to the VE, was incomplete as it did not include all of her
limitations. (See JS at 24.)

   At Step Five of the sequential evaluation process, the burden
shifts to the Commissioner to prove that there is available work which
a claimant can perform.  Testimony of a VE is material in meeting this
burden.  See Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).
Hypothetical questions posed to the VE in making this determination
must be supported by substantial evidence in the record.  Id. at 1164-

1165, <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993.)

Plaintiff's contention of error is based upon her view that the limitations imposed by her treating physicians should have been included in the hypothetical questions. This issue is subsidiary to Plaintiff's principal complaint, as articulated in her first issue, that her treating physicians' opinions were not properly evaluated. For the reasons previously articulated, the Court rejects Plaintiff's argument as to the incompleteness of the hypothetical question posed to the VE.

For the foregoing reasons, the Court rejects Plaintiff's argument that the ALJ erred at Step Five in the sequential evaluation process.

## THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

Plaintiff's final contention is that the ALJ failed to properly evaluate her credibility. After summarizing Plaintiff's testimony at the hearing, the ALJ indicated that,

"While the [Plaintiff's] impairments are reasonably
expected to result in some functional limitations, her
allegations of limitations in excess of those established by
the medical evidence are not entirely credible."

(AR at 28.)


With regard to the content of Plaintiff's testimony at the hearing, this was summarized in the opinion as follows:

"The [Plaintiff] testified at the hearing that she can
walk less than one block, stand 15 minutes maximum, and sit
30 minutes. She drove to the hearing by herself and can
dress and bathe herself. She occasionally shops for

1    groceries and cooks.  She has a valid driver's license.  She
2    complains of back and right-sided pain, hand numbness, right
3    leg pain, generalized body pain, occasional shortness of
4    breath, and disinclination to go out.  She complains of
5    severe headaches and nausea.  She testified that she had
6    epidural injections without success.  She complains of low
7    energy during the day."
8    (AR 28.)

9

10   The factors utilized to evaluate credibility are well recognized
11   both by regulation and case decision.  These include statements of the
12   claimant, reports made by the claimant, statements by treating and
13   non-treating sources, statements of others about medical history,
14   diagnosis, prescribed treatment, daily activities, efforts to work,
15   and other evidence demonstrating how the claimant's impairments affect
16   ability to work. (See 20 C.F.R. §416.929(a).)  So-called "excess pain"
17   testimony may be rejected if specific findings are made which provide
18   adequate justification.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th
19   Cir. 1986).  Inconsistency between the objective medical evidence and
20   the extent of excess pain complaints is in and of itself insufficient
21   to reject a claimant's credibility; however, in such cases, an ALJ
22   must provide clear and convincing reasons for rejecting the subjective
23   symptom testimony.  See Regennitter v. Commissioner of Social Sec.
24   Admin., 166 F.3d 1294, 1296 (9th Cir. 1999)(citing Lester v. Chater,
25   81 F.3d 821, 834 (9th Cir. 1995)).

26   Turning to the ALJ's decision, the Court must now determine
27   whether Plaintiff's credibility was properly impeached.
28   First, the ALJ compared Plaintiff's excess pain complaints to the

objective medical evidence.  As noted, a claimant's credibility cannot be impeached, even if her described symptoms could not reasonably be expected to be caused by her demonstrated impairments; rather, a claimant need only show that the impairment could reasonably have caused some degree of the symptom.  See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Thus, it is recognized that pain is highly subjective and idiosyncratic.  Nevertheless, one appropriate factor to examine in the analysis is whether excess pain complaints and descriptions are out of proportion to the demonstrated objective medical evidence. (See AR at 28, and Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  In this regard, the ALJ noted that Plaintiff's back and knee complaints were essentially mild in nature. In response to Plaintiff's description of upper extremity pain and abnormalities, the ALJ noted that there was no credible evidence to support these complaints.[5]

The ALJ further noted that Plaintiff's treatment has been "essentially routine and/or conservative in nature." (AR at 28.) Plaintiff's response (see JS at 34, et seq.) is that she essentially has sought and obtained appropriate treatment; however, the fact is that a comparison may be made between extreme complaints, such as Plaintiff's, with a relatively conservative treatment regimen. Plaintiff conflates frequency of treatment with conservative treatment.

The ALJ also considered Plaintiff's activities of daily living ("ADL").  For example, the ALJ cited Plaintiff's statement in her

---

[5]    As the Court has previously noted, Dr. Maissian, one of Plaintiff's treating physicians, asserted that Plaintiff had such upper extremity issues; however, Dr. Maissian's opinion was not credited by the ALJ.

1   daily activities questionnaire that, "My children are dependent upon
2   me for normal parental things."

3       The ALJ also noted that although Plaintiff claimed she needed
4   somebody to assist her in leaving her house (AR 29, 268), she drove to
5   the hearing by herself.  Plaintiff points out that during the hearing,
6   she testified that on the day of the hearing she was not able to
7   receive a ride from her sister who had been scheduled to take her to
8   the hearing because her sister was ill, and that Plaintiff had no
9   other available options. (AR 57, 63-64.)  While the hearing date may
10  have presented a unique situation, nevertheless, the ALJ justifiably
11  relied upon lay observations made by staff members, for example, in
12  Disability Reports from the Field Office, which, as the ALJ remarked,
13  noted her as having no difficulties with standing, sitting, walking or
14  concentrating. (See AR at 29, 301, 264, 237.)  On these three
15  occasions, Plaintiff was observed to have no apparent limitations.
16  Clearly, the discrepancy between Plaintiff's extreme complaints and
17  her often-observed lack of any corresponding limitations is relevant
18  to the credibility analysis.

19      For the foregoing reasons, the Court determines that the ALJ's
20  credibility assessment was not erroneous.  The Decision will be
21  affirmed, and the matter will be dismissed with prejudice.

22      **IT IS SO ORDERED**.

23

24  DATED: ___October 23, 2007___        _____/s/_____
25                                       VICTOR B. KENTON
                                         UNITED STATES MAGISTRATE JUDGE
26

27

28